PEDRO, CARMEN LUZ y CARMEN ELENA MALDONADO, representados por su padre con patria potestad LUCIANO MALDONADO, recurrentes, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, compuesta por los Sres. MANUEL LEÓN PARRA, Presidente, y JUAN M. HERRERO y FRANCISCO PAZ GRANELA, Comisionados Asociados, demandada, y EL FONDO DEL SEGURO DEL ESTADO, asegurador e interventor.

Núm. 207.—*Sometido:* Enero 27, 1941. *Resuelto:* Febrero 10, 1941.

*Ismael Soldevila,* abogado de los recurrentes; *Hon. Procurador General George A. Malcolm, E. De Aldrey, Procurador General Auxiliar* y *Víctor J. Vidal González* y *G. Atiles Moréu,* abogados los dos últimos del Fondo del Seguro del Estado, abogados del interventor, el Fondo mencionado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Los peticionarios, nietos de Agapito Rodríguez, alegando depender de éste para su sostenimiento, interpusieron el presente recurso para revisar la resolución de la Comisión Industrial de Puerto Rico de 6 de agosto de 1940 que les negó compensación porque la muerte de dicho obrero no fué causada por un accidente del trabajo sino por las enfermedades que padecía.

El obrero contaba sesenta años de edad y la muerte le sorprendió mientras se dedicaba a la ocupación a que durante los últimos diez o quince años de su vida se había dedicado, es decir, en la limpieza y desyerbo de zanjas.

El día 8 de agosto de 1937 el obrero fué empleado por el capataz Miguel Renta para que limpiara una zanja en la Colonia Florida, del término municipal de Salinas. Según declaró Renta en la vista pública celebrada en San Juan ante el Comisionado Sr. Paz Granela el 4 de diciembre de 1939, el obrero empezó su trabajo a las siete de la mañana, recomendándole Renta que procurase terminarlo durante el día, y como a las ocho de la mañana el mismo capataz fué al sitio donde trabajaba el obrero y no viéndolo, lo llamó, mas como no contestaba, creyó que el obrero había salido del trabajo, cosa que no le extrañó, pues trabajaba por ajuste y en ese

caso no tenía la obligación de permanecer constantemente trabajando durante las horas laborables. Se marchó del sitio y no volvió a saber del obrero hasta el siguiente día en que fué encontrado muerto en la propia zanja donde trabajaba, aunque según se infiere de la declaración de Renta, el cadáver no estaba en el mismo sitio donde había estado el capataz la mañana anterior.

El Dr. José A. Peña, médico de Salinas, que practicó la autopsia del obrero inmediatamente después de descubrirse su muerte, declaró que falleció de muerte repentina, de origen cardiovascular, causada por una hipertrofia del corazón, esclerosis de las arterias coronarias, tuberculosis pulmonar y en otro de sus órganos, y *schistosomiasis* del hígado, enfermedad ésta producida por el parásito denominado *bilharzia*. Declaró además el perito que al practicar la autopsia trató de determinar algún síntoma objetivo que indicase si mientras estuvo vivo tuvo alguna decompensación cardíaca, pero no presentaba edema, ni humidad en los pulmones, ni congestión en el hígado ni en el bazo, todo lo cual lo llevó a la conclusión de que mientras trabajaba no sufrió de insuficiencia cardíaca. En otras palabras, que la muerte fué causada por la enfermedad que padecía y no por un esfuerzo extraordinario como alegan los recurrentes. A preguntas de la representación del Fondo del Estado, declaró que siendo como eran crónicas las enfermedades de que padecía el obrero, podía existir la posibilidad de que aun muriendo al hacer un esfuerzo extraordinario, no apareciesen necesariamente signos de decompensación; pero que si estos signos hubieran aparecido, entonces sí podía asegurarse positivamente que la muerte había sido causada al hacer un esfuerzo extraordinario.

El Dr. Vadi, llamado por la representación de los recurrentes, en su examen directo manifestó que convenía con el Dr. Peña en que el obrero falleció por enfermedad, de muerte súbita, del corazón, y a repreguntas de la representación del Fondo del Estado aseguró que debido a lo avanzado de sus

lesiones pudo haber muerto acostado en su cama después de comer.

Los informes periciales no excluyen de manera absoluta la posibilidad más o menos remota de que la muerte del obrero hubiese sobrevenido al realizar un esfuerzo extraordinario; pero como prescribe el artículo 4 de la Ley de Evidencia (Código de Enjuiciamiento Civil, artículo 366), "la ley no exige aquel grado de prueba que, excluyendo la posibilidad de error, produzca absoluta certeza, porque tal prueba es rara vez posible. Sólo se exige la certeza moral o un grado de prueba que produzca convicción en un ánimo no prevenido." De suerte que, a falta de prueba satisfactoria de que en realidad existió tal esfuerzo extraordinario, tendremos que concluir que la Comisión Industrial no erró al apreciar y dar crédito a la prueba pericial. Véase artículo 11 de la Ley núm. 45 de 1935, (1) pág. 251) según fué enmendado por la núm. 121 de 1940, pág. 729.

Veamos ahora en qué consistió la prueba del alegado esfuerzo extraordinario. Esta evidencia consistió exclusivamente en la declaración del capataz Miguel Renta. Manifestó este testigo en la vista pública del 4 de diciembre de 1939 que él fué al sitio donde trabajaba el obrero a las 8 de la mañana, no encontrándolo, como ya sabemos, y en el curso de su declaración dijo que la cantidad de trabajo realizado por el obrero representaba como cuatro horas de labor, de donde infiere el abogado de los recurrentes que si el obrero empezó a trabajar a las siete de la mañana y una hora después había realizado una labor que requería cuatro horas para hacerla, necesariamente tuvo que verificar un esfuerzo extraordinario para superarse en la forma en que lo hizo.

A nuestro juicio no erró la Comisión Industrial al descartar por completo la teoría del "esfuerzo extraordinario", puesto que tal teoría, si no es físicamente imposible, es, por lo menos, inverosímil. No es posible creer que un hombre de sesenta años de edad que por espacio de diez o quince años ha venido padeciendo de hipertrofia del corazón, esclerosis

de las arterias coronarias, tuberculosis pulmonar y de otro órgano del cuerpo, y schistosomiasis del hígado, pueda, mediante un esfuerzo extraordinario continuado por espacio de una o dos y media horas, realizar el trabajo físico que a un hombre normal tomaría cuatro horas para hacer. Posible es que un hombre en las condiciones físicas en que se hallaba el obrero trate de realizar un esfuerzo momentáneo y como consecuencia del mismo muera; pero asegurar que un hombre en tales condiciones físicas pueda realizar un esfuerzo continuado, de la magnitud indicada, es, como dijimos antes, si no físicamente imposible, por lo menos tan inverosímil que no podía darle crédito la Comisión Industrial ni nadie que analizase los hechos desapasionadamente y libre de prejuicios.

Además, la declaración de Renta en cuanto a la hora en que fué al sitio donde trabajaba el obrero, fué impugnada con éxito mediante su propia declaración prestada el 11 de agosto de 1937 en la Colonia Florida, sólo tres días después de la muerte del obrero cuando los hechos estaban frescos en su memoria y cuando quizás no existía aún la esperanza de lograr una compensación. En su referida declaración de 11 de agosto de 1937 Renta manifestó que fué al sitio donde trabajaba el obrero a las 9:30 de la mañana y nada dice sobre la cantidad de trabajo realizado. De todos modos, el cálculo hecho por Renta era una mera opinión suya que la Comisión no venía obligada a seguir, tanto más cuanto que como hemos visto, esa opinión era inaceptable, habida cuenta de la edad y del deplorable estado de salud en que se hallaba el obrero.

A nuestro juicio no erró la Comisión Industrial al estimar probado que el obrero Agapito Rodríguez falleció a consecuencia de las enfermedades de que padecía y no por un accidente proveniente de cualquier acto o función inherente a su trabajo.

*Por tanto, procede, a nuestro juicio, desestimar el recurso y confirmar la resolución recurrida de 6 de agosto de 1940.*